Howard B. Crosby, Petr., *vs.* Morrison Libby.

Kennebec.　Opinion September 7, 1915.

*Appeal.　Ballots.　Covering up the Name.　Designation of the Office.*
*Election.　Intention of Voter.　R. S., Chap. 6,*
*Sects. 70-74.　Slips.　Stickers.*

1. An appeal from a judgment rendered upon a petition brought under R. S. ch. 6, secs. 70-74, to determine whether the petitioner, at the State election held September 14, 1914, was duly elected county commissioner of the County of Kennebec for the term beginning January 1, 1915, or whether the respondent was so elected.

2. The word "For" preceding the title of office upon the official ballot is not essential nor within the requirements of statute.

3. As used in ch. 6, R. S., a slip is a strip and a sticker is a gummed slip or strip.

4. The proper place for a slip printed by the Secretary of State is that wherein the strip must be placed by the voter, when voting for a substitute that is on and over the name of the candidate deceased or withdrawn, and the rules for counting ballots when a strip is attached by the voter apply equally when a slip is attached by direction of the Secretary of State.

5. When in applying a slip or a strip, the voter in the one case or an official, under direction of the Secretary of State, in the other, covers the designation of office in whole or in part, the vote should be counted when from an inspection of other parts of the same ballot and of other ballots cast at the same election, it is apparent what the designation of office, so covered, is.

6. When a slip or strip placed in one column or group of the ballot over the name of a candidate, whether done by direction of the Secretary of State or by the voter, extends into an adjacent column or group and covers part, or the whole, of the christian name of a candidate in the latter column over which the voter places his cross, the vote should be counted for the candidate whose christian name is thus wholly or partly covered.

7. Where a slip is so applied that the names of both the original candidate and the substitute fully appear under the designation of the office, each is equally entitled to be counted and neither can be. But where the strip is so placed that a portion of the original name is covered, the name so covered must be regarded as erased, although it can be read.

On appeal by petitioner. Petition dismissed with costs for the respondent.

This petition was brought under the provisions of sections 70-71-72-73 and 74 of chapter 6 of the Revised Statutes, to determine whether the petitioner, at the state election held on September 14, 1914, was elected county commissioner of the County of Kennebec for the term beginning January 1, 1915, or whether the defendant was so elected. The petition was heard before a single justice, who ordered, adjudged and decreed that the petition of Howard B. Crosby be dismissed with costs. From this decree, petitioner appealed.

The case is stated in the opinion.

*William R. Pattangall,* for petitioner.

*Frank L. Dutton,* for defendant.

SITTING: SAVAGE. C. J., BIRD. HALEY, HANSON, PHILBROOK, JJ.

BIRD, J. This is an appeal from the judgment of a single justice rendered upon a petition brought under §§ 70-74, c. 6, R. S., to determine whether the petitioner, at the State election held on September 14, 1914, was duly elected county commissioner of the County of Kennebec for the term beginning January 1, 1915, or whether the defendant was so elected.

The name of the petitioner was printed upon the official ballots. Arthur W. Leonard was also duly nominated for the office of county commissioner and his name printed upon the official ballots, but on the thirteenth day of September, 1914, after distribution of the ballots by the Secretary of State as provided by § 16, c. 6, R. S., Mr. Leonard died and the respondent, Morrison Libby, was duly nominated to supply the vacancy and the nomination certified to the Secretary of State, in accordance with R. S., c. 6, §§ 6 and 8.

The printing of new ballots being, as admitted, impracticable, slips containing the new nomination were printed, under the direction of the secretary of state (R. S., c. 6, § 8) and by him distributed to the clerks of the cities towns and plantations of Kennebec County with instructions, addressed to the presiding election officers of the several voting places therein, directing them "to place on the official ballots the printed slips containing the new nomination aforesaid over

the name of the above mentioned Arthur W. Leonard, such slips to be placed upon every ballot before the same has been given into the hands of the voter." Out of the compliance, or attempted compliance, apparently, of the election officers with these instructions arise questions affecting by far the larger number of ballots now in dispute. The difficulty confronting us as to these ballots was occasioned by the careless manner in which some of the slips were "pasted" upon sundry ballots.

In announcing his conclusions the sitting justice declared he had been guided by the following rules:

"Rule 1. All ballots were counted wherever the title to the office could be discovered by reading the letters that appear above the sticker.

"Rule 2. All ballots were counted when the designation of the office to be filled, though fully covered by the sticker, could be clearly read through the sticker.

"Rule 3. All ballots were counted, although the sticker placed in the corresponding column at the left of the petitioner's name extended over the line and covered the whole or a part of said petitioner's first name."

As most of the ballots disputed were disposed of pursuant to these rules and the exhibits are arranged accordingly, we will first consider the ballots allowed or rejected under these rules.

The ballots allowed by the sitting justice, twenty-three in number under Rule 1, and those admitted by him under Rule 2, one hundred and ninety-five in number, involve the obliteration in part, or in whole, of the designation of the office. Premising that we do not consider the word "For" preceding the title of the office as essential or within the requirement of the statute, we will consider the ballots admitted under Rules 1 and 2 of the sitting justice together.

It is agreed by counsel that the slips, the application of which caused the obliteration, in whole or in part, of the designation of office were applied by election officers acting upon the order of the Secretary of State.

Among the directions for the preparation and distribution of ballots, found in R. S., c. 6, it is provided in section 10 that "Every general ballot  .   .   .   shall contain the names  .   .   .   of all candidates whose nominations for any office specified in the ballot

have been duly made and not withdrawn . . . and the office for which they have been severally nominated . . . . A blank space shall be left after the names of the candidates of each different office in which the voter may insert the name of any person, for whom he desires to vote as candidate for such office.

In section 8 of the same chapter provision is made for supplying a vacancy caused by the' death or withdrawal of a candidate and printing upon the ballots the name "supplied for the vacancy" "or, if the ballots have been printed, new ballots containing the new nomination shall, whenever practicable, be furnished, or, slips containing the new nomination shall be printed under the direction of the Secretary of State, which may be pasted in proper place upon the ballots and thereafter shall become part and parcel of said ballots as if originally printed thereon." That is, the name borne upon the slips, not the slip, shall become part of the ballot as if originally printed thereon.

Neither section eight nor section ten indicate what is the "proper" place for the pasting of the slips. The former simply makes the requirement and the latter provides for a blank space after the names of candidates in which the voter may fill in the name of any person for whom he desires to vote. Section twenty-four of chapter 6 clearly shows that this space is not appropriate for stickers unless the name above the space is otherwise erased. But somewhat minute directions are given the voter in section twenty-four of chapter 6 indicating the manner in which he shall prepare his ballot. After providing for a change in candidates by erasure and "filling in," under the name erased, the name of the candidate of his choice, it also indicates how strips or stickers may be used as follows: "Or if the voter places and sticks on and over the name or names of any candidate or candidates for any office or offices, a small strip or strips of paper, commonly known as a sticker or stickers, bearing thereon a name or names other than the name or names of the candidate or candidates so erased or covered up, the name or names of such candidate or candidates so covered shall be considered to be erased from the ballot, and the person or persons whose name or names shall so appear on said strip or strips of paper so placed and stuck on the ballot, shall be deemed to be voted for by the voter as a candidate or candidates for such office or offices." The first method

requires erasure and substitution as two distinct acts while by the second method one act constitutes both erasure and substitution.

It may be objected that strips or stickers are not slips, but we think they are. A strip is a slip. Johnson's Dict.; Webs. New Intern. Dict.; Standard Dict.; The Century Dict. A sticker is a gummed slip or strip. The words are to be construed according to the common meaning of the language.

We think it requires no argument to reach the conclusion that the proper place for a slip printed by the Secretary of State is that wherein the strip must be placed by the voter pursuing the second method, that is on and over the name of the candidate deceased or withdrawn and that the rules for counting such ballots when the sticker is attached by the voter apply equally when it is attached by direction of the Secretary of State.

The sitting justice evidently sought to apply the rule laid down in *Bartlett* v. *McIntire*, 108 Maine, 161, which was followed in the later case of *Pease* v. *Ballou*, 108 Maine, 177, and has since been recognized as the established rule of law in this State. *Bartlett* v. *McIntire*, concerned ballots to which strips had been attached by voters. In it, it was said that "The designation of the office is an indispensable part of any ballot. There must be an office to be filled as well as a candidate to fill it, and if a sticker entirely covers the designation of office, or if the designation be erased, the ballot cannot be counted. But when a sticker is so placed that enough of the top parts of the letters of the designation remain so that the eye can see what the office was the vote should be counted."

The case of *Bartlett* v. *McIntire* marked a distinct departure of the court as then constituted from the somewhat narrow rules theretofore adopted in construing the ballot law, was the result of a conviction that a more broad and reasonable interpretation should be given and the opinion was drawn in absolute conformity to the rules laid down by the court as the actual count progressed. But we are strongly impressed that the rule there laid down as to the designation of office should be still further broadened and liberalized.

It must be conceded that the designation of the office, as well as the candidate, must appear upon the ballot as printed by the Secretary of State, such being the positive requirement of statute. But conceding this, is the rule that when by the use of a strip or sticker

part of the designation of the office so printed is covered, the ballot is to be counted when and only when "enough of the tops of the letters of the designation remain so that the eye can see what the office was," (noting that there is no provision of statute for the erasure of the designation of office) a certain and workable rule which will lead honest minds to the same conclusion? All such must know from other ballots or, indeed, from the same ballot what the designation partly covered was, for the like space in each column is devoted to the same office and its candidate or candidates. Will not knowledge of this fact subconsciously lead one to count, while another fully conscious of the fact refrains? It seems a rule of doubtful reasonableness when honest minds may so differ and the right of franchise of the voter made to depend upon the number on the one hand of letters exposed and on the other of letters concealed or erased and the degree to which the former are apparent, varying in many cases by the merest fraction of an inch. As already stated it must be as absolutely known from other ballots and like parts of the same ballot as any fact may be known, that the place in or upon which a strip or slip is applied is devoted to the candidacy of a certain office whether the investigator is a primary counting officer or the court or any unofficial person of ordinary intelligence. Is not the intention of the voter clear who accidentally covers the designation of the office in whole or in part by a strip, when the designation of office covered must be perfectly well known?

Given then a ballot properly prepared by the Secretary of State with the designation of the office and the name of the candidate; the vote should be counted when from inspection of other parts of the same ballot and of other ballots cast at the same election, it is apparent what the designation of office covered is. When the designation of the office has been placed upon the ballot by the Secretary of State in conformity with law and it has been covered by the voter in applying the strip or sticker, it cannot be contended that such voter applying the sticker intended by the same act to render his vote void. Is the presence of the designation of the office upon the ballot less certain and known when wholly covered than when parts of its letters are disclosed or less certain when the parts exposed cannot be read than when they can be read?

The ballots in question under the first two rules of the sitting justice, twenty-three and one hundred ninety-five in number respectively are allowed and counted for respondent.

The ballots of the third class, considered by the sitting justice under Rule 3, to the number of three hundred and thirty-seven, are those whereon, as claimed, the slips bearing the name of Morrison Libby extended over into the next group or column to the right, in which the name of petitioner appeared, and covered in part, and, in one instance the whole, of his Christian name "Howard."

It is admitted that Howard B. Crosby and Morrison Libby are the only men of those names in the County of Kennebec and that there are no men in the county by the name of Morris Libby or Ward B. Crosby.

The intent of the Australian ballot law was not "to limit or defeat the sacred right of franchise by establishing a method so intricate or complicated as to circumvent the intention of the honest voter. That intention must of course be expressed in compliance with statutory requirements but those requirements are to be interpreted broadly and reasonably. Sec. 27 provides that if for any reason, it is impossible to determine the voter's choice for an office to be filled, his ballot, shall not be counted for that office. If the converse of this be thereby implied, namely, that all ballots shall be counted where it is possible to determine the voter's choice, a wide latitude would be given to the canvasser. However it must be a legally expressed choice with presumptions in favor of the voter rather than against him." *Bartlett* v. *McIntire,* 108 Maine, 161, 166. And in the same case it is said on page 171 that in order that a distinguishing mark be effective to cause the rejection of a ballot it must be established from an inspection of the ballot "that it was made intentionally and not accidentally." See *Libby* v. *English,* 110 Maine, 449, 454. Pub. Laws, 1911, c. 71.

The name of Howard B. Crosby as candidate for the office of county commissioner was printed upon the ballot in the second column or group from the left by the Secretary of State. The act, whether of the voter or of the election officer, while applying the strip or slip over the name of the deceased candidate, in the first or left hand column, by which it was placed over the whole or part of the Christian name of Howard B. Crosby was casual and acci-

dental so far as inspection of the ballot reveals. It is equally as idle to assume that the voter or an election officer in applying a strip or slip in one column intended to cover part of the name in the next column as it is to assume that the voter or election officer purposely covered with a sticker the designation of office. Such an act on the part of the election officer would have been fraud which is not to be presumed and which should be ineffectual to affect the rights of the voter.

Assume a voter, intending to vote for the candidates in the first or left hand column, places a sticker over the name of the candidate in that column covering as well the Christian name of the candidate in the column next to the right, or second column and that he then changes his purpose, and, deciding to vote for the candidates in the second column, makes the appropriate mark in the square at the head of that column. Can it be held an intentional erasure of the Christian name in question? Does an inspection of the ballot reveal such intent? The name of the candidate in the second column was printed there by the proper official and remains except that part of the name is casually covered. There can be no question of the voter's intent.

A uniform rule applicable in all cases whether a sticker is applied by an official or a voter is desirable that confusion arising from the existence of one rule in the one case and a different rule in the other may be avoided. No possible advantage is conceivable from such diversity.

This conclusion is in harmony with the rule laid down in *Bartlett* v. *McIntire* as to "incomplete names" by reason of "broken stickers." In the prseent case, however, it is known to a certainty that the full name of Howard B. Crosby, although accidently partly concealed by a slip or strip applied in another column, was printed upon the ballot, while in the case of the broken sticker the portion of the name lost is inferred.

The case of erasure of part of the name of a candidate by a strip manifestly applied in the same column in which the name is printed, or by pencil, will be considered when occasion requires.

Of the three hundred and thirty-seven ballots in the class now under consideration, six must be rejected as bearing distinguishing marks, the nature of which it will be profitless to discuss. The

remainder of these ballots three hundred and thirty-one in number must be counted for the petitioner.

Sixteen ballots, rejected for various reasons by the sitting justice, are exhibited and to his action in so doing counsel make no serious objection. We have already rejected six, in considering class three and find nine others which should be rejected making a total of fifteen.

Six other ballots claimed by petitioner are presented. As no objection is urged for their rejection in argument, or brief, by counsel for respondent, they are counted for petitioner. One other ballot claimed for petitioner and clearly defective is rejected.

Twenty-five ballots apparently counted for respondent remain to be considered. The objections may be roughly classified as follows:—fourteen ballots on which all of the letters in whole or in part of the name of Arthur W. Leonard appear above the sticker bearing the name of Morrison Libby, thus enabling the name of the former to be read and nine ballots whereon the sticker exposes part only of the letters of the name of the deceased candidate, but not enough to enable his name to be read. We think in considering these ballots, the intention of the voter as gathered from an inspection of the ballot should control, unless non compliance with some positive provision of statute forbids. The ballot should be counted where it is possible to determine the voter's choice legally expressed. The presumption is in his favor. Section 24 of c. 6, R. S., provides two methods, as already seen, by which the voter may substitute a new candidate for one printed upon the ballot.

Under the first method the drawing of a pencil mark through the name of the candidate discarded has been considered as a sufficient erasure, although the primary meaning of erasure is to rub out or obliterate. To erase is synonymous with to expunge or to cross out. When a name is crossed out by the pencil, it is seldom that the name cannot be read. Yet the erasure is held complete. That the strip should be applied with mathematical precision can hardly be intended or that complete obliteration be indispensable in the second method more than in the other. In the second method the use of the strip in itself indicates an intention to vote for a substitute candidate. If, however, the strip is so applied that the name of both the original candidate and the substitute appear in full under the designation of

the office each is equally entitled to be counted and neither can be. R. S., c. 6, § 27. But where the strip is so placed that a portion of the original name is covered, we think the name so covered must be regarded as erased although it can be read. There remain two other ballots, upon one of which a cross was made in the squares above two columns or groups with clear indications of an attempt to erase that in the square other than that above the name of respondent and one in which, by reason of a broken sticker, the last syllable only of the Christian name of respondent appears. The twenty-five ballots are counted for respondent.

Our conclusions may be tabulated as follows:

| | | |
|---|---:|---:|
| Number of ballots rejected........................ | | 16 |
| Number of ballots for Morrison Libby now undisputed | 5742 | |
| Number counted for Libby of the disputed.......... | 243 | 5985 |
| | | |
| Number of ballots for Howard B. Crosby now undisputed ...................................... | 5489 | |
| Number counted for Crosby of the disputed......... | 337 | 5826 |
| | | |
| Total ........................................ | | 11,827 |

Libby's plurality, 159.

It is therefore held that the respondent having received a plurality of all the ballots cast for county commissioner for the County of Kennebec at the State election held on the fourteenth day of September, 1914, was duly elected county commissioner of said county for the term beginning January 1, 1915, and is entitled by law to the office now held by him.

*Petition dismissed with costs for respondent.*

OPINION BY CORNISH, J. I concur in the result of the opinion of a majority of the court but think that so much of that opinion as overrules the doctrine of *Bartlett* v. *McIntire,* 108 Maine, 161, governing the counting of ballots with stickers placed by the voters themselves, is unnecessary in this case and therefore in the nature of dicta.

The case of *Bartlett* v. *McIntire,* supra, and the other cases following, viz: *Pease* v. *Ballou,* 108 Maine, 177, and *Libby* v. *English,* 110 Maine, 177, all involved the effect of stickers affixed by the voter himself under R. S., ch. 6, sec. 24, while the case at bar calls

for the determination of the effect of slips pasted by an election officer under R. S., ch. 6, sec. 8. It does not seem to me to be necessary in deciding this case to either affirm or overrule the prior cases which rest upon a different state of facts and are governed by a different section of the statute. It may be proper and timely to consider that question when the occasion calls for such re-examination and I express no opinion as to the wisdom of then modifying the existing rule or adopting that announced in the decision of the court. It is sufficient now to decide the case before us.

I. The distinction between the prior cases and the present is apparent. R S., ch. 6, sec. 24, prescribes the manner in which the voter shall mark his ballot with a cross in the appropriate place and then continues, "And if the voter shall desire to vote for any person or persons, whose name or names are not printed as candidates on the party group or ticket, he may erase any name or names which are printed on the group or party ticket, and under the name or names so erased he may fill in the name or names of the candidates of his choice. Or if the voter places and sticks on and over the name or names of any candidate or candidates for any office or offices a small strip or strips of paper, commonly known as a sticker or stickers, bearing thereon a name or names other than the name or names of the candidate or candidates so erased or covered up, the name or names of such candidate or candidates so covered shall be considered to be erased from the ballot and the person or persons whose name or names shall so appear on such strip or strips of paper so placed and stuck on the ballot shall be deemed to be voted for by the voter as a candidate or candidates for such office or offices."

This section has no application to the present case. The voters who cast ballots now under consideration did not "desire to vote for any person or persons whose names were not printed as a candidate on the party group or ticket." On the contrary they desired to vote and they did vote for the respondent, whose name was printed on a slip and had been placed on the party group or ticket by the proper officials. They did not "place and stick on and over the name or names of any candidate or candidates for any office or offices a small strip or strips of paper commonly known as a sticker or stickers, etc." On the contrary they did not change or attempt

to change the official ballot in the slightest degree, but simply followed the statutory instructions by placing the cross in the party square; and by so doing the statute expressly declares that "they shall be deemed to have voted for all the persons named in the group under such party or designation." This respondent was named in that group as a candidate for county commissioner and therefore these voters must be deemed to have voted for him. And he was the only candidate for that office in that group. The original nominee had died, and his place had been filled by another, the respondent. The name of the original nominee in the space had become a nullity. It was as if the space were vacant and the new name had been inserted in it. Nor was there any candidate over whose name a sticker could be placed, because a dead man cannot be a candidate in the eye of the law. Section 24 contemplates two living people, either of whom would be eligible, and the substitution of one for the other by the voter himself who has a preference and expresses it. Here death had created a vacancy, had removed one name, and the name of the new nominee was really the only name in the space.

It is obvious therefore that sec. 24 has to do only with voter-changed ballots, with split tickets, so called, and the cases already cited apply only to that class. But that is not this case. Other provisions of the statute govern here because the facts and the situation are different.

2. It is admitted that Mr. Leonard, the original nominee for county commissioner, died on the eve of election. The ballots had already been printed and distributed. A new nomination was duly made by the proper authorities and the new name was furnished to the Secretary of State. That official followed the directions specified in R. S., ch. 6, sec. 8, enacted to meet such an emergency, viz: "If the ballots have been printed, new ballots containing the new nomination shall, whenever practicable, be furnished, or slips containing the new nomination shall be printed under the direction of the Secretary of State, which may be pasted in proper place upon the ballots and thereafter shall become part and parcel of said ballots as if originally printed thereon." The time was too short to permit the printing of new ballots for the entire County of Kennebec. That was not "practicable," and therefore slips were printed under the

direction of the Secretary of State and were pasted upon the ballots by the proper election officers before they were delivered to the voters. All this is conceded.

But the statute says they shall be pasted "in proper place." What is the fair and reasonable meaning of those words? Obviously the proper place is the appropriate place, that portion of the party column devoted to county commissioner. That is precisely what was done here. The slips were placed in proper place and the fact that they covered or failed to cover the name of a deceased candidate is entirely immaterial. In legal contemplation the old name had vanished and the new name was the only one in the space.

And whether in the rush and hurry of preparing a large number of ballots within a brief period of time some of the slips were accidentally or carelessly pasted by the officials so as to cover in whole or in part the name of the office is likewise immaterial. Too great nicety is neither demanded nor expected in the placing of these slips. Section 8 does not require it. The rights of the voter and the rights of the candidate ought not to depend upon the exact angle at which the slip adheres to the official ballot, nor upon its precise location within the fractional part of an inch.

But even if it could be held that the officials had made an error in allowing the slip to cover too much of the title or too little of the original name, even then the voters should not suffer, for no principle is better settled than that they shall not be disfranchised by reason of official neglect. The right of suffrage is jealously guarded by the law, and unsuspecting voters are not to be deprived of that right through the ignorance or carelessness of those who represent the State and stand charged with official responsibility. The will of the people is not to be thwarted by immaterial errors in the ballot. Opin. Justices 107 Maine, 514-517.

The ballots in the case at bar do not contain "stickers," but, as the statute terms them, they are "slips" containing "the new nomination," the only name on the official ballot that can be voted for for county commissioner in that party column. The indisputable fact is that all these rejected ballots in the precise form in which they were rejected, were not split tickets but official ballots. The slips were as official as the rest of the ticket. They were printed under the direction of the Secretary of State, they were affixed by the

election officers in the space set apart for the candidate for county commissioner and they thereby became in the language of the statute "part and parcel of said ballots as if originally printed thereon." Every ballot bore the official indorsement, the sign manual, required by section 10, "Official ballot for Ward —" and the fac simile of the signature of the Secretary of State. They were delivered to the voter as official ballots and he had a right to rely upon them as such and to assume that they were correct in every respect. Reliability has been declared to be one of the chief purposes of the official ballot. Opin. Justices, 107 Maine, supra. The voter is forbidden to use any other or deposit any other in the ballot box. Sec. 27. Unless, then, we are prepared to say that the voter who receives an official ballot and casts it unchanged is to be disfranchised, these ballots must be counted.

3. But it is urged by the petitioner that this court, as counting officials, can be governed by nothing else than by the ballots as cast and by the form in which they appear before us. If by this is meant that in counting ballots with stickers upon them affixed by the voters, we cannot go outside the ballots to ascertain the voters' intention, but must be governed by their intention as expressed, I readily concur. But if it means that when it is admitted as here that the slips containing the name of the new candidate were affixed by the election officers themselves in perfecting the official ballot, and were not stickers affixed by the voters after the perfected official ballot had been received by them, still we must shut our minds to that fact and must count them as sticker ballots and not as slip ballots, I must most vigorously dissent. What right have we to do this? Whence comes our authority for such action? Sticker ballots are governed by one section of the statute, sec. 24, and slip ballots by another, sec. 8. The former change the official ballot, the latter perfect and complete the official ballot. They are entirely distinct, and each must be counted according to the requirements of the respective sections. Section 24 has been construed in the decisions before referred to. But a count under section 8 has never arisen in this State until the present time. That section has now come up for construction and I have endeavored to construe it according to its plain and unambiguous terms, giving that reasonable interpretation which is in harmony with the letter and the spirit of

the whole Australian ballot law and with the general rules of law applicable to all elections under our form of government.

And what applies to the Court applies with equal force to the original count in open town or ward meeting by the election officers themselves when the polls are closed. They are the identical persons who pasted the slips and have full knowledge of the fact. Must they too shut their minds and memories to the manner in which the slips found their way to the ballots and regard them as stickers and count them as if affixed by the voters? Can the same hand and eye that pasted the slips in the morning, prepared the ballots and offered them to the voters as official and correct, reject them in the evening as defective on the ground that they do not meet the requirements as to stickers? Such a position is untenable.

If the rule contended for by the petitioner should obtain it would open the door to such wholesale fraud in the hands of unscrupulous officials as it is not pleasant to contemplate. A way is thereby pointed out by which not merely by accident but by design such officials might so prepare the official ballot under like circumstances as to disfranchise a large number of helpless and unsuspecting voters, if they should see fit to do so, by the artful manner of pasting the slips, and such ballots would be rejected by the very hand that perpetrated the trick. This puts too high a premium upon wrong doing and leaves the electors at the mercy of designing officials, a situation that should never be countenanced, much less encouraged.

In the case at bar there is neither claim nor indication of any fraud. The election officers were doubtless honest in the performance of their duties. They endeavored to give the voters an opportunity to vote for the respondent as the new nominee for county commissioner, and in my opinion they did so, because the ballot they perfected complied with the statute regulating the substitution. The voters by making the cross at the head of the party column expressed their intention to vote for the new nominee in the only manner in which such intention could be expressed, and thereby, in the language of the statute, "they are deemed to have voted" for him. The title to an elective office is derived from the popular expression at the ballot box, and the will of the people is not to be defeated by the mistakes, negligence, or fraud of election officers. To hold in this case that the candidate who actually received a substantial plu-

rality of the votes cast must be thrust from his office simply because some of the officially placed slips covered a portion of the title, or failed to cover the name of a dead man, is in my judgment to violate the statute under which elections are held as well as the fundamental principles of law and good government.

Without, therefore, re-examining the doctrine of *Bartlett* v. *McIntire,* supra, as to voter placed stickers, my conclusion is that the voters in the case at bar ought not to be disfranchised because of carelessly placed official slips and that the entry should be, as held by the majority of the court,

*Petition dismissed with costs.*

MR. JUSTICE KING concurs in this opinion.